IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

WILLTON NC NY, LLC and
CONTINENTAL MANAGEMENT LLC,

          Plaintiffs,

v.                                  CIVIL ACTION NO.  2:25-cv-00315

MILLENNIA HOUSING MANAGEMENT LTD.,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Verified Complaint* (Document 1), the *Joint Motion for Temporary Restraining Order and Preliminary Injunction* (Document 7), the *Memorandum in Support of Joint Motion for Temporary Restraining Order and Preliminary Injunction* (Document 8), *Defendant Millennia Housing Management Ltd.'s Brief in Opposition to Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction* (Document 11), and the *Reply Memorandum in Support of Plaintiffs' Joint Motion for Temporary Restraining Order and Preliminary Injunction* (Document 15), as well as all attached exhibits.  For the reasons stated herein, the Court finds that the motion for a temporary restraining order and preliminary injunction should be denied.

## FACTS[1]

The Plaintiffs are Willton NC NY, LLC, a property investor, and Continental Management LLC, a property management company. The Defendant, Millennia Housing Management, Ltd., is a property management company. The dispute in this case involves Rolling Hills Townhouses and Cottages, an affordable residential property subject to regulation by HUD (the United States Department of Housing and Urban Development) located in Parkersburg, West Virginia.

Willton is identified as the "Investor Member" in the Operating Agreement of FM15 Investments, LLC, dated January 30, 2023 (Document 1-3). MH-I Investments, controlled by F. Sinito and M. Sinito, is identified as the "Operating Member" of FM15. Powell Investments, LLC, in turn, entered into the Parkersburg Powell Limited Partnership via a Partnership Agreement (Document 1-2) with FM15. Powell Investments is also controlled by the Sinitos and is affiliated with MH-I Investments. Rolling Hills is owned by Parkersburg Powell.

Millennia began managing Rolling Hills in 2007. It signed a Property Management Agreement (Document 7-2 at 30) with Parkersburg Powell in January 2023, detailing its specific duties in connection with managing Rolling Hills. A 2023 HUD inspection found the property to be well run and well maintained. (Sinito Aff. at ¶ 9) (Document 11-1.) A 2024 audit of Parkersburg Powell has not yet been finalized but was recently amended to note unauthorized distributions of $66,940.[2] (Audit, Document 15-1 at 48.) Millennia indicates that it offers

---

[1] The facts contained herein are drawn from the parties' submissions. Because a review of the contracts and other documents is sufficient to resolve the propriety of preliminary relief, the Court finds a hearing unnecessary.
[2] The Defendant indicated that the audit had found no material issues at the time it filed its response brief. The Plaintiffs attached a version updated shortly thereafter to their reply brief, and the updated version noted the unauthorized distributions.

supplemental services and community events for Rolling Hills residents, such as after-school programs, distribution of personal care items, access to computers, and holiday events.

Millennia is subject to a 5-year debarment period, beginning on December 14, 2023, in which it is excluded from procurement and nonprocurement transactions with HUD. Millennia indicates that the debarment applies only to new management contracts, but it is permitted to continue managing the 200+ properties in its existing portfolio, including Rolling Hills. Although HUD approved Willton's request to change the management company at Rolling Hills to Continental, Millennia asserts it did so without undertaking a sufficient review and has agreed to review Millennia's request to engage in a more thorough procedure. Mr. Sinito[3] avers that Willton sought similar certifications of management changes at other properties impacted by the ownership/management dispute between Willton and MH-I from the Detroit HUD office, and that office established a process to engage in a thorough review of the arguments presented by both Willton and Millennia and MH-I. The Baltimore HUD office that approved replacement of Millennia with Continental as the property manager at Rolling Hills had not stayed or reversed its decision as of May 27, 2025.

The allegations in this case arise from a broader contractual dispute between Willton and MH-I. Willton invoked a provision in the Operating Agreement permitting it, as the Investor Member, to remove MH-I as the Operating Member of FM15, based on allegations that MH-I had engaged in assorted financial mismanagement or malfeasance. Following notice of the removal event, MH-I notified Willton of its intent to exercise its contractual right to purchase Willton's membership interest in FM15. (July 2, 2024 Letter, Document 7-3 at 29.) On October 31, 2024,

---

[3] The Plaintiffs challenge the Sinito affidavit on the grounds that it was notarized in Ohio but signed in New York. The Court finds the affidavit sufficient for purposes of this motion.

Willton sent a notice indicating that Millenia had not paid the purchase price and was therefore in breach of the Amended Operating Agreement, and further asserting the removal of MH-I and associates as General or Operating Partners at the various properties. (October 31, 2024 Notice, Document 7-3 at 31.) On February 13, 2025, Willton sent notice of its intention to terminate property management agreements with Millennia at the various properties, effective April 15, 2025. (February 13, 2025 Notice, Document 7-3 at 39.) Willton sent another notice, dated May 6, 2025, advising MH-I, Millennia, Parkersburg Powell, FM15, and the Sinitos that they had five business days to perform certain transition duties and cooperate with Continental in the transfer of property management duties as to Rolling Hills. (May 6, 2025 Notice, Document 7-3 at 49.) The Notices assert that MH-I is obligated to make certain payments to Willton.

Willton filed a civil action against MH-I and the Sinitos on July 22, 2024, in the Southern District of New York, alleging breach of contract, fraud, civil RICO violations, breach of fiduciary duty, unjust enrichment, promissory estoppel, and seeking declaratory judgment as to the parties' rights and obligations and an accounting of the books and records of FM15. Complaint, Document 2, *Willton NC NY, LLC v. MH I Investment LLC et al*, No. 1:24-cv-5526 (S.D.N.Y filed July 23, 2024). The issues presented therein overlap with the allegations contained in the instant complaint and motion for a temporary restraining order and preliminary injunction.

Willton seeks a temporary restraining order and preliminary injunction to permit Plaintiffs to access the premises, staff, records, and contractors, to prohibit Millennia from destroying or tampering with documents, data, equipment, keys, records, etc., associated with Rolling Hills, and to require Millennia to cooperate with and facilitate the transfer of management to Continental,

including relinquishing control of accounts and ceasing transactions on behalf of the property, among other specific requests.

## STANDARD OF REVIEW

Rule 65(b)(1) of the Federal Rules of Civil Procedure provides that a temporary restraining order may be issued without notice

> only if (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

Fed. R. Civ. P. 65(b)(1). A preliminary injunction may be issued "only on notice to the adverse party." Fed. R. Civ. P. 65(a)(1). The Defendant has appeared and responded in this matter.

"A preliminary injunction is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Mountain Valley Pipeline, LLC v. W. Pocahontas Props. Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019) (internal punctuation and citations omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiffs must satisfy all four requirements. *JAK Prods., Inc. v. Bayer*, 616 F. App'x 94, 95 (4th Cir. 2015) (unpublished, per curiam opinion); *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *cert. granted, judgment vacated,* 559 U.S. 1089, 130 S. Ct. 2371, 176 L. Ed. 2d 764 (2010), and *adhered to in part sub nom. The Real Truth About Obama, Inc. v. F.E.C.*, 607 F.3d 355 (4th Cir. 2010). The standard requires the plaintiff "to make a clear showing of likelihood of

success on the merits." *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287, 292 (4th Cir. 2011) (quotation marks omitted). It does not require plaintiffs to establish a certainty of success, however. *Roe v. Dep't of Def.*, 947 F.3d 207, 219 (4th Cir. 2020), *as amended* (Jan. 14, 2020).

## DISCUSSION

The Plaintiffs assert that they are entitled to preliminary relief because Millennia has no legal right to manage Rolling Hills as a result of Willton's decision to remove it as manager and HUD's approval of Continental as the replacement manager. They argue that HUD's approval letter establishes that they are likely to succeed on the merits. The Plaintiffs contend that Millennia's continued position at Rolling Hills risks the property's status with HUD because Millennia has been suspended from HUD programs and is not completing required documentation. The Plaintiffs indicate that there is evidence that Millenia is misappropriating or mismanaging funds. They argue that, because Millennia has no legal authority to remain at Rolling Hills, it would not be harmed by the requested injunction, while they will suffer irreparable harm if Continental is unable to manage Rolling Hills. The Plaintiffs assert that, absent an injunction, Millennia "is likely to, for example, change passcodes and keys, or destroy documents when it is Continental's responsibility to effectively manage the property." (Pls.' Mem. at 8.) The Plaintiffs further argue that injunctive relief is in the public interest because it would effectuate HUD's determination as to the authorized manager, and it would ensure the safe continuation of the public housing benefit offered at Rolling Hills.

The Defendant argues that the Plaintiffs cannot establish any of the factors necessary for preliminary relief. It contends that Willton's efforts to remove Millennia and take operational control of FM15, Parkersburg Powell, and Rolling Hills are not permissible under the contracts,

that litigation regarding control of FM15 is ongoing, and that Willton therefore cannot demonstrate a likelihood of success on the merits. Millennia argues that HUD's approval of the change in management is not dispositive because it arose from Willton's contractually improper exercise of authority, and MH-I was not given the opportunity to intervene before HUD issued its approval. Millennia further contends that the Plaintiffs have offered no more than speculation to support the claim of irreparable harm, while Millenia has effectively managed the property for nearly twenty years. Millennia argues that any damages ultimately found can be remedied with money damages at judgment. It points to ongoing disputes between Willton and other Sinito entities to support its contention that an injunction would interfere with resolution of the broader disputes by placing Willton in a more favorable position. Finally, Millennia argues that it has a successful track record of managing Rolling Hills and provides additional resources and services to residents, while a change in management would cause unnecessary disruption.

In reply, the Plaintiffs emphasize that the Defendant is not a party to the New York lawsuit, and the Defendant is a separate entity from MH-I. Millennia Housing Management never had an ownership stake in Parkersburg Powell or FM15, and it never had operational authority over those entities. The Plaintiffs again argue that the HUD debarment of Millennia and the HUD approval of Continental as manager at Rolling Hills are dispositive and clearly establish that they are likely to succeed on the merits. They argue that the "Defendant's continued operation of Rolling Hills after termination of the [management agreement] constitutes irreparable harm where Defendant has no right to continue its operation." (Pls.' Reply at 11.)

The Plaintiffs' arguments all begin with the presumption that Willton will prevail in its contract dispute with non-party MH-I. But that dispute is yet to be resolved and is already

7

pending before another court. Who has the authority to make operational decisions for Rolling Hills turns on various matters that are the subject of factual and legal dispute, and the Court finds that those disputes are not suited for preliminary resolution. Development of the evidentiary record through the normal litigation process will aid resolution. Willton's efforts to bypass those disputes and rest on HUD's acceptance of its request to replace Millennia with Continental are unavailing, both because Willton's authority to make that request of HUD is disputed and because Mr. Sinito indicates that MH-I and Millennia were not given the opportunity to present their arguments prior to HUD's decision. Thus, the Court finds that the Plaintiffs have not established a likelihood of success on the merits.

The Plaintiffs' evidence falls even more starkly short as to irreparable harm. "While irreparable harm is only one of the four factors courts must consider in determining whether to grant injunctions, the Supreme Court has made clear that, regardless of the other factors, '[t]he equitable remedy [of an injunction] is unavailable absent a showing of irreparable injury.'" *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 386 (4th Cir. 2017) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). To establish an irreparable harm, the moving party must clearly show that the harm it will suffer is "neither remote nor speculative, but actual and imminent." *Mountain Valley Pipeline, LLC v. 6.56 Acres of Land, Owned by Sandra Townes Powell*, 915 F.3d 197, 216 (4th Cir. 2019) (citations omitted). Additionally, "irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." *Multi–Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.,* 22 F.3d 546, 551 (4th Cir. 1994).

As with the likelihood of success on the merits, the Plaintiffs' primary argument rests on the premise that Willton will prevail in its contract dispute with MH-I. Assuming that Willton

has authority to make decisions for Rolling Hills, the Plaintiffs contend any interference with that authority harms them. But waiting until litigation is complete to obtain relief for a contract dispute is not irreparable harm. The remaining harms asserted are largely speculative. Millennia remains in control at Rolling Hills and *could* use that control to damage the property, interfere with relationships with tenants, employees, and suppliers, misappropriate funds, destroy records, or commit other malfeasance, but the Plaintiffs have presented no evidence that it is doing so, with the exception of some evidence of financial impropriety. The Plaintiffs have not "overcome the presumption that a preliminary injunction will not issue when the harm suffered can be remedied by money damages at the time of judgment." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). Millennia has managed Rolling Hills for nearly twenty years, and the Plaintiffs have not presented evidence of either substantial issues during that extended period of management or some sudden change that could cause irreparable harm while the parties to this suit and the parties to the related lawsuit(s) and administrative actions pending elsewhere litigate their various claims.

Having found that the Plaintiffs have not met their burden as to either likelihood of success on the merits or irreparable harm, the Court will not address the remaining factors. *Vitkus v. Blinken*, 79 F.4th 352, 361 (4th Cir. 2023) ("[A] district court is entitled to deny preliminary injunctive relief on the failure of any single *Winter* factor, without fully evaluating the remaining factors."). Granting preliminary relief would disrupt, rather than maintain, the status quo in this case, and the Court finds no basis for granting such extraordinary relief. *Di Biase v. SPX Corp.*, 872 F.3d 224, 231 (4th Cir. 2017) ("The principal function of a preliminary injunction is to maintain the status quo").

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Joint Motion for Temporary Restraining Order and Preliminary Injunction* (Document 7) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    June 4, 2025

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA